| iDefendant-appellant, Dan Grady, filed this appeal asking that we reverse the ruling of the district court which disqualified him from being a candidate for the Office of District Attorney of the Thirty-Fifth Judicial District. A panel of three judges heard arguments on July 30, 1996, and rendered a judgment. The defendant-appellant applied to the Louisiana Supreme Court for a writ of certiorari and/or review. The Supreme Court granted a writ and remanded the matter to us for an En Banc decision. The court sat En Banc today, August 5,1996 and heard the case. For reasons assigned below, we affirm the trial court’s ruling.
The trial court disqualified appellant on the finding that he did not meet the residency requirements for the office. At issue was whether he will have resided in |2the judicial district for the two years preceding election. The qualifying requirements for this office are found both in the Louisiana Constitution and in the Louisiana Revised Statutes.
The constitutional provision concerning the qualifications for candidates for the position of district attorney is La. Const. Art. V, § 26(A), which provides:
(A) Election; Qualifications; Assistants. In each judicial district a district attorney shall be elected for a term of six years. He shall have been admitted to the practice of law in the state for at least five years prior to his election and shall have resided in the district for the two years preceding election. A district attorney may select assistants as authorized by law, and other personnel.
Mirroring these requirements, La.R.S. 16:1(A) requires:
*1073 A. In each judicial district and in the parish of Orleans, there shall be a district attorney. He shall be elected at the congressional election, beginning in 1984 and every six years thereafter, shall serve a term of six years, and shall take office and begin his term on the second Monday of January following election. He shall have been admitted to the practice of law in the state for at least five years prior to his election and shall have resided in the judicial district for the two years preceding the election. The district attorney for the parish of Orleans shall have resided therein for two years preceding the election. A district attorney may select assistants as authorized by law, and other personnel.
At the conclusion of the trial, the trial court applied the requirement that appellant “shall have resided in the judicial district for the two years preceding election.” The congressional election this year is November 5. The trial court examined the facts to see if appellant will have resided in Grant Parish for the two years preceding November 5, 1996. The trial court was aware of the jurisprudence that the party opposing a person’s qualifications to run for an office bears the burden of proving that the person does not meet the requisite criteria.
The admissions of fact, the answers to interrogatories, and the testimony adduced at the trial on the merits of this suit, established that the Gradys first came to live in Grant Parish when appellant took the position as First Assistant District | ¡^Attorney for the Thirty-Fifth Judicial District in November of 1992. During the time between November of 1992 and December of 1993, the Gradys rented a place to five in Grant Parish. During this time, though, appellant’s wife, desiring to complete her undergraduate degree, attended Louisiana State University in Baton Rouge and lived there. To be with his wife, appellant often spent time with her in Baton Rouge, commuting to his job in Colfax.
In December of 1993, appellant accepted employment with the Twenty-First Judicial District. Upon taking this latter job, appellant gave up his residence in Grant Parish, rented a residence in Walker, Livingston Parish, and moved there in January of 1994. Furthermore, upon completing the move, appellant changed his voter’s registration to Livingston Parish.
Appellant maintained contact with the District Attorney’s Office in Grant Parish, completing cases, and on one occasion he made a trip to that parish. There was evidence that he had permission to spend the night at a house owned by an employee of the district attorney’s office in Grant Parish, had he needed to, but he never did. Appellant did receive correspondence at the post office box in Grant Parish which was for the use of the district attorney’s office, but he had no place to reside in Grant Parish while he and his wife lived in Livingston Parish.
Appellant testified that he intended to return to Grant Parish at some indefinite point in the future. In January of 1995, he did return to work for the Grant Parish District Attorney’s Office, and the Gradys found a house in Grant Parish and moved into it.
The trial court concluded that on November 5, 1996, appellant will have resided in Grant Parish for less than the two years preceding the election. The court acknowledged that after appellant had taken a job and moved to Livingston Parish, |4he continued to perform some unfinished work in Grant Parish throughout the time in which he resided in Livingston Parish. However, the court found specifically that appellant did not reside in Grant Parish and did not spend even one night there in the interval between his move to Livingston Parish in January 1994 and his return to Grant Parish in January 1995.
This is not a manifest error case. The factual questions arising as a consequence of this challenge to appellant’s qualifications to run for the district attorney’s office are not at issue. The facts are uncontested that appellant moved to Grant Parish in 1992 and continued to live there until his move to Livingston Parish in January of 1994. No one questions appellant’s residence in Grant Parish after 1992 and prior to January of 1994. Nor is there a question that throughout 1994 appellant resided in Livingston Parish. Both sides recognize that during that year appellant had no address in Grant Par *1074 ish other than the post office box in Colfax (the parish seat) rented for the use of the Grant Parish District Attorney’s Office. What is before us is a question of law.
The essence of appellant’s legal argument rests on burden of proof. The argument is that appellee has faded to prove that he abandoned his Grant Parish residence that had been established in 1992. Appellant characterizes his move to Livingston Parish as a mere temporary move with the intent to return to Grant Parish at some point in the future. Appellee responds that the record amply proves that in January of 1994, appellant ceased to be a resident of Grant Parish, became a resident of Livingston Parish until his return to Grant Parish in January of 1995, and more importantly, was not a resident of Grant Parish on November 5, 1994, the date exactly preceding by two years the election herein at issue.
| rAppellant accurately references the jurisprudence of this state to the effect that a temporary absence does not necessarily mean that a person ceases to be a resident. Among other citations of authority, appellant cites this court to Tomlinson v. Frazier, 407 So.2d 1385 (La.App. 4 Cir.), writ denied, 410 So.2d 764 (La.1982), wherein a candidate’s residence and domicile were challenged. The court in Tomlinson found that the candidate, who had moved from New York back to the State of Louisiana less than two years immediately prior to his qualifying to run for a public office, had in fact never ceased being a resident of Louisiana. However, the Tom-linson court, quoting the trial judge, made certain observations which emphasize the numerous distinctions between its facts and ours:
“The facts indicate that defendant always intended to maintain his residence at 329 Diana Street while he resided in New York City. During this period, he periodically returned to New Orleans and stayed at the Diana Street address. Over this period of time he maintained the property and paid the monthly mortgage, taxes, water bill and insurance premiums. This evidence unequivocally shows that defendant intended to reside in New York temporarily solely because of the job opportunity at Harlem General Hospital. It was the defendant’s intention to return to New Orleans within a definite period of time after completing his employment contract.”
Tomlinson, swpra, 407 So.2d at 1388.
In the instant case, the evidence overwhelmingly established that appellant ceased to have any residential location in Grant Parish after he took a job in Livingston Parish and moved there. Unlike the candidate in Tomlinson, appellant herein did not own any immovable property in Grant Parish, nor did he have any rented living quarters in that parish. His move to Livingston Parish was not temporary; he changed his voting registration to Livingston Parish. The only residence he had during 1994 was in Livingston Parish.
We are mindful of the long established jurisprudential rule that a temporary absence from a place of residence does not mandate a loss of that residence. See, for ^instance, Tullos v. Lane, 45 La.Ann. 333, 12 So. 508, 510 (1893), holding, “... an absence which the party all the while intended as merely temporary, to be followed by the resumption of the former residence, will not be considered an abandonment of the former residence.” However, the holding in Tullos was clarified by Harrison v. Commission Council of Bogalusa, 169 So.2d 159, 164 (La.App. 1 Cir.1964), wherein that court stated:
In the case at bar, however, plaintiff removed himself and his entire family from Bogalusa and the State of Louisiana, on June 11, 1962, more than 17 months prior to his application for permits on November 20, 1963. During this entire time appellant’s family remained with him in the State of Texas where his children entered and attended school. At the time of plaintiffs application he still worked and resided in Texas and his children still remained in school there. Although plaintiff may have possessed the mental intention of returning to Bogalusa to reside, and did in fact return to visit his parents “when he could” and also owned a partially furnished home in Bogalusa which dwelling he rented, nevertheless in view of his complete removal of his family therefrom for the protracted period of more than 17 months *1075 prior to November 20, 1963, and his actual living in Texas with his entire family on said date, it is our judgment that on said date he had but one residence and that in the State of Texas. Any other determination, in our view, would sanction the rule that mere intention, unaccompanied by actual presence or act of residence is sufficient to maintain residence contrary to what we believe to be the established jurisprudence of this state.
In supporting the trial court’s legal conclusions in this case, appellee cites this court to numerous cases which discuss the legal requirements necessary for a determination of whether a person has a residence in a particular voting district. In each of the cases upon which appellee relies, the courts noted that the prerequisite for finding a residence is the person’s having a place of abode. See, for instance, Soileau v. Board of Sup’rs, St. Martin Parish, 361 So.2d 319 (La.App. 3 Cir.1978), [citing with approval Williamson v. Village of Baskin, 339 So.2d 474, 476 (La.App. 2 Cir.), writ denied, 341 So.2d 1126 (La.1977), stating “There must be actual, physical use or occupation of quarters for living purposes before residence is established”].
RThe trial court in the case under consideration found that appellant had no living quarters in Grant Parish as of November 5, 1994. As stated above, the parties to this litigation do not seriously challenge this factual determination. The trial court correctly concluded as a matter of law that appellant will not have resided in Grant Parish for the two years preceding the election for the office for which he seeks to be a candidate. Accordingly, we affirm the trial court’s ruling herein at appellant’s cost.
AFFIRMED.