# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-531


**GWEN FONTENOT AND RENEE M. BROWN**

**VERSUS**

**TODD P. MCKELLAR, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 80,831-A
HONORABLE MARCUS L. FONTENOT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## CANDYCE G. PERRET
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, D. Kent Savoie, Van H. Kyzar, Candyce, G. Perret, Jonathan W. Perry, Sharon Darville Wilson, Charlie G. Fitzgerald, Gary J. Ortego, Ledricka J. Thierry, Guy E. Bradberry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**


**SAVOIE, J., concurs.**
**KYZAR, J., dissents for the reasons assigned by Judge Stiles.**
**BRADBERRY, J., dissents for the reasons assigned by Judge Stiles.**
**STILES, J., dissents and assigns written reasons.**

**Jerald R. Harper**
**Anne E. Wilkes**
**Harper Law Firm**
**213 Texas Street**
**Shreveport, LA 71101**
**(318) 213-8800**
**COUNSEL FOR DEFENDANT- APPELLANT:**
    **Todd P. McKellar**

**Anne E. Watson**
**The Law Office of Anne E. Watson, LLC**
**232 North Liberty Street**
**Opelousas, LA 70570**
**(337) 942-9790**
**COUNSEL FOR PLAINTIFFS -APPELLEES:**
    **Gwen Fontenot**
    **Renee M. Brown**

**Jacob B. Fusilier**
**Fusilier & Associates, LLC**
**Post Office Box 528**
**Ville Platte, LA 70586**
**(337) 363-6661**
**COUNSEL FOR PLAINTIFFS- APPELLEES:**
    **Gwen Fontenot**
    **Renee M. Brown**

**PERRET, Judge.**

The defendant, Todd P. McKellar, appeals a judgment of the trial court disqualifying him as a candidate for election to the Louisiana House of Representatives District 38 seat at the October 14, 2023 primary election. The trial court found that Mr. McKellar was not actually domiciled in the geographic boundaries of District 38 for one year prior to filing paperwork to qualify on August 8, 2023. As this case involves a candidate for membership in the state legislature, it is required to be heard by this court en banc. La.R.S. 18:1409(H).

## FACTS

Gwen Fontenot and Renee M. Brown, qualified electors in Evangeline Parish, filed a Petition Objecting to Candidacy Pursuant to La.R.S. 18:1406 on August 14, 2023. Both plaintiffs live in House of Representatives District 38, which includes parts of Evangeline Parish and Rapides Parish. They allege that Mr. McKellar, who had filed to run for State Representative for District 38, was not actually domiciled in the district for a year preceding his qualification for candidacy. They allege he owned a home in Calcasieu Parish, his homestead exemption was on the home in Calcasieu Parish until April 11, 2023, and he voted in the November 2022 election in Calcasieu Parish. Thus, they allege that he does not meet the qualifications for the office of State Representative and sought to disqualify him and have his name removed from the ballot.

Mr. McKellar did not file an answer (*see* La.R.S. 18:1406(C)), but appeared at the hearing set for August 16, 2023, and disputed the claims of Dr. Fontenot and Ms. Brown.

At the hearing, both plaintiffs introduced evidence to establish that they are qualified electors of House District 38 and have standing to bring this action. They introduced evidence from the Louisiana Secretary of State's office that Mr.

McKellar voted in the congressional election on November 8, 2022. They also introduced evidence that Mr. McKellar maintained his homestead exemption on his home in Calcasieu Parish from May 26, 2015 to April 11, 2023. The plaintiffs also elicited testimony from Mr. McKellar that he received bank statements at the Calcasieu Parish home, his vehicle was registered at the Calcasieu Parish home, the Calcasieu Parish home is where his business was domiciled, and the address on his driver's license was in Calcasieu Parish until February 2023.

Mr. McKellar then testified that his home in Calcasieu Parish was rendered uninhabitable because of damages sustained during Hurricane Laura in August 2020. He introduced pictures to show the state of the home after the storm passed. He also testified that he moved into the home of his girlfriend, then Ericka Causey, in Glenmora in Rapides Parish, which is in House District 38, on October 30, 2021, and has lived at the home in Glenmora since that time. He also introduced evidence that he married Ericka on March 25, 2022, and that his intent has been to remain domiciled in Rapides Parish since he originally moved in with her. He testified that he has one child with his wife who was a year old, and he has begun the proceedings to adopt Ericka's older children. He also testified that he moved all his belongings to the Glenmora home in January 2022, when he installed a portable building on the property near Ericka's home in Glenmora. He testified that the home in Calcasieu Parish remained uninhabitable until only two months before the date of the trial, and he listed it for sale in January 2023. He denied that he remained registered to vote in Calcasieu Parish because he intended to return there to live. Mrs. McKellar also testified and stated that Mr. McKellar has lived with her in Glenmora since October 30, 2021.

Chad Sarver, the contractor engaged to repair Mr. McKellar's Calcasieu Parish home, testified that Mr. McKellar told soon after he was hired to restore the

home that he had no intention of returning to live there. He also testified that he only installed the air conditioning at the Calcasieu Parish home in November 2022, which would have been the earliest that the house could have been habitable. He also testified that he only recently as of the date of trial sent Mr. McKellar the final invoice for work on the house.

Mr. McKellar's brother-in-law and neighbor, Darrell Lane Causey, testified that Mr. McKellar has lived with his sister since October 2021. He stated that he sees him just about every day. Two other neighbors, Travis Burnett and Wayne Dupre, Jr., also testified that Mr. McKellar lives at the Glenmora home with his wife. The parties stipulated that several other witnesses would testify likewise.

At the conclusion of the hearing, the trial court issued this ruling:

> Okay, the court has reviewed the law, considered all the evidence, and agreed that the issue before the court, and I think counsel the interesting thing with this case is and I think counsel will agree. The facts are not necessarily all that disputed, it's the interpretation of the fact presented to the court. I think it's clear, um, that Mr. McKellar was domiciled in Rapides Parish at least as of February of 2023. The issue is his domicile one-year prior to the actual qualification. And I think that date is in... is it August 10th or 11, when they qualified?
>
> . . . .
>
> Is August 10th of 2022. So, basically, under our constitution a person must be actually domiciled in the [preceding] year in that legislative district. A person can have more than one residence, but a person can only have one domicile. Um, civil code provides that proof of one's intent to change domicile depends on the circumstances. Determination of a party's intent to change his domicile must be based on the actual state of facts not simply what the persons declares. So, in other words, I have to look at the facts not just what someone says. So, this is the facts as I interpreted them. Number one, Calcasieu Parish is not in District 38. I think we all agree the, uh, the map was presented, uh, in the event it's not I think also, Mr. McKellar has more than one residence. He has a residence, and it appears from the evidence he has residence in Calcasieu Parish and he has a residence in Rapides Parish. Uh, the facts presented that his house in ... or his residence in Calcasieu Parish has been under repair since the hurricane, I believe the date of the hurricane was 2020. Um, the evidence also shows and the facts show that Mr. McKellar had a homestead exemption that remained in Calcasieu Parish until, well for 2022, so remained there until 2023. Uh,

3

the facts also show that many of Mr. McKellar's personal records, uh, retain his Calcasieu Parish address as of August of 2022. And continues to this date. Um, the records also, the facts also show that Mr. McKellar, uh, did not own, was not registered vote, or claimed homestead exemption in Rapides Parish until, uh, at least after August 10th of 2022. And the big one for the court is that Mr. McKellar voted in Calcasieu Parish in November of 2022. The act of voting, and a lot of times you hear the old saying actions speak louder than words, the act of voting is a conscience, deliberate action by Mr. McKellar indicating his intent at least as of November 22 ... November 2022, was to be domiciled in Calcasieu Parish. Accordingly, the court, um, sustains the objections of Mr. McKellar's candidacy on the grounds that he failed to meet the qualifications that's alleged in the petition. Uh, Mr. McKellar is disqualified as a candidate for the Office of House of Representatives. Um, it's a final judgment and, uh, this will be my reasons for ruling.

The trial court signed a judgment granting the petition filed by the plaintiffs.

Mr. McKellar now appeals.

## ASSIGNMENTS OF ERROR

Mr. McKellar asserts six assignments of error:

1. The trial court erred when it found that Todd P. McKellar ("McKellar") retained a domicile in Calcasieu Parish in 2022, when he had left that Parish as a resident and resided exclusively in Rapides Parish since October 31, 2021.

2. The trial court committed legal error in finding domicile in Calcasieu Parish in late 2022, when McKellar had no residential presence in that Parish for more than two years.

3. The trial court erred in failing to take into account undisputed evidence that McKellar's house in Calcasieu Parish was destroyed by Hurricane Laura in August 2020, and at that time he indicated that he would not return to live there.

4. The trial court committed legal error in confusing the concepts of domicile and residence and the legal elements of each.

5. The trial court erred in failing to find that McKellar had established a new habitual residence and domicile in Rapides Parish commencing on October 31, 2021 in light of undisputed testimony and documentary evidence establishing that fact.

6. The trial court committed legal error in failing to liberally construe the election laws and undisputed evidence in a fashion which promotes, rather than defeats candidacy.

4

# APPLICABLE LAW

Louisiana Revised Statutes 18:1461(A)(1) requires that a "person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing a notice of his candidacy[.]" Pursuant to La.R.S. 18:463(A)(1)(a), a notice of candidacy is required to include the address of the candidate's domicile. When the "qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying." La.R.S. 18:451. Louisiana Constitution Article 3, § 4(A) sets the requirements for eligibility to serve as a member of the legislature:

> **Age; Residence; Domicile.** An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.

Louisiana Civil Code Article 38 defines the domicile of a natural person as "the place of his habitual residence." "A natural person may reside in several places but may not have more than one domicile. In the absence of habitual residence, any place of residence may be considered one's domicile at the option of persons whose interests are affected." La.Civ.Code art. 39. In a previous election suit, this court stated in *Herpin v. Boudreaux*, 98-306, pp. 6-7 (La. App. 3 Cir. 3/5/98), 709 So. 2d 269, 271, *writ denied*, 98-0578 (La. 3/11/98), 712 So. 2d 859:

> Domicile is a person's principal domestic establishment, as contrasted to a business establishment. *Messer v. London*, 438 So.2d at 547; *Broussard v. Romero*, 607 So.2d 979, 980 (La.App. 3rd Cir.1992). In other words, a person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. LSA–C.C.P. art. 1234; *Veillon v. Veillon*, 517 So.2d 936, 940 (La.App. 3rd Cir.), *writ denied*, 519 So.2d 105 [669 So.2d at] 1238 (La.1987). Further, a person's domicile of origin continues until another is acquired. *Blackwell v. Blackwell*, 606 So.2d 1355, 1358 (La.App. 2nd Cir.1992).

In *Broussard v. Romero*, 607 So.2d 979, 980-981 (La.1992)(footnote omitted), the supreme court explained:

> A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. *Succession of Rhea*, 227 La. 214, 78 So.2d 838 (1955). There is a presumption against change of domicile. *In Re Adoption of Rials*, 220 La. 484, 56 So.2d 844 (1952).
>
> The phrase "actually domiciled" in the Constitution of 1974 requires that one holding legislative office have a real rather than fictitious domicile in the area represented. However, the question of "intention", the crux of the preceding codal articles, remains viable. See 5 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 328.

Any objections to a candidacy must be brought by a qualified elector in an election for an office in which the plaintiff is qualified to vote. La.R.S. 18:1401(A). An objection may be based on any of the grounds in La.R.S. 18:492(A), including that "[t]he defendant does not meet the qualifications for the office he seeks in the primary election." La.R.S. 18:492(A)(3).

The supreme court explained the burden of proof applicable to challenges of a candidate's qualifications, specifically domicile:

> Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. *See Becker v. Dean*, 03–2493, p. 7 (La.9/18/03), 854 So.2d 864, 869; *Russell v. Goldsby*, 00–2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051; *Dixon v. Hughes*, 587 So.2d 679, 680 (La.1991); *Messer v. London*, 438 So.2d 546 (La.1983). It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. *Becker*, 03–2493 at 7, 854 So.2d at 869; *Pattan v. Fields*, 95–2375 (La.9/28/95), 661 So.2d 1320. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections "so as to promote rather than defeat candidacy." *Becker*, 03–2493 at 7, 854 So.2d at 869; *Russell*, 00–2595 at 4, 780 So.2d at 1051; *Dixon*, 587 So.2d at 680. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Becker*, 03–2493 at 7, 854 So.2d at 869; *Russell*, 00–2595 at 4, 780 So.2d at 1051; *Dixon*, 587 So.2d at 680.

*Landiak v. Richmond*, 05-758, pp. 6-7 (La. 3/30/05), 899 So.2d 535, 541.

The plaintiff must present sufficient evidence to show the existence of a contested fact, in this case the fact that Mr. McKellar has not been domiciled in District 38 for one year at the time of qualification for office. If the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to present sufficient evidence to rebut the plaintiff's evidence. *Landiak*, 899 So.2d 535.

## DISCUSSION

At the outset, we note that Mr. McKellar argues that the trial court committed legal error, and that we should review this case without applying the deference afforded under the manifest error standard of review. He cites *Williford v. Grady*, 96-1040 (La.App. 3 Cir. 8/5/96), 688 So.2d 1072. In that case, the defendant qualified to be a candidate for district attorney in Grant Parish. The defendant moved to Grant Parish to work as an assistant district attorney in November 1992. While the defendant lived in a rented house in Grant Parish, his wife lived in Baton Rouge to complete her degree at LSU. The defendant often spent time with her in Baton Rouge, commuting to Colfax for work. In December 1993, the defendant went to work in Livingston Parish and gave up his residence in Grant Parish. He returned to Grant Parish in January 1995 to work at the district attorney's office and moved into a house in Grant Parish. The trial court found that he did not qualify as he would not have resided in Grant Parish for two years preceding the election as required by La.Const.Art. V, § 26(A) and La.R.S. 16:1(A). In affirming the judgment of the trial court, this court stated:

> This is not a manifest error case. The factual questions arising as a consequence of this challenge to appellant's qualifications to run for the district attorney's office are not at issue. The facts are uncontested that appellant moved to Grant Parish in 1992 and continued to live there until his move to Livingston Parish in January of 1994. No one questions appellant's residence in Grant Parish after 1992 and prior to January of 1994. Nor is there a question that throughout 1994 appellant

resided in Livingston Parish. Both sides recognize that during that year appellant had no address in Grant Parish other than the post office box in Colfax (the parish seat) rented for the use of the Grant Parish District Attorney's Office. What is before us is a question of law.

*Williford*, 678 So.2d at 1073-74.

Mr. McKellar argues that there are no contested issues of fact in this case. He admits that he established residency and domicile at the home in Calcasieu Parish in 2015, where he remained until the home was destroyed and he was displaced by Hurricane Laura in August 2020. While he continued to operate his business in Lake Charles and engaged a contractor to repair the home there, he resided with various friends and family until October 2021, when he moved in with Ericka. He moved his belongings from the Calcasieu Parish home to a building he placed at the Glenmora home in January 2022. He married Ericka in March 2022. He listed the Calcasieu Parish home for sale in January 2023. He changed his voter registration and his driver's license address to the Glenmora address in February 2023. He moved his homestead exemption to Rapides Parish in April 2023 as his home in Glenmora was nearing completion, and he cancelled the homestead exemption in Calcasieu Parish. While he admits that he did vote in the congressional election in November 2022 in Calcasieu Parish, he argues that that uncontested fact does not establish his intent to be domiciled in Calcasieu Parish. Mr. McKellar argues that none of these facts are disputed, and the only issue before this court is the legal significance to apply to those facts.

Mr. McKellar additionally points out that the plaintiffs and the trial court all agree that he was domiciled in Rapides Parish by December 2022 or February 2023. He argues the trial court committed legal error in finding that he was actually domiciled in Calcasieu Parish with any finding that he had a residence in Calcasieu Parish after August 2020. He cites *Williford*, 688 So.2d at 1075, which stated:

8

In supporting the trial court's legal conclusions in this case, appellee cites this court to numerous cases which discuss the legal requirements necessary for a determination of whether a person has a residence in a particular voting district. In each of the cases upon which appellee relies, the courts noted that the prerequisite for finding a residence is the person's having a place of abode. *See*, for instance, *Soileau v. Board of Sup'rs, St. Martin Parish*, 361 So.2d 319 (La.App. 3 Cir.1978), [citing with approval *Williamson v. Village of Baskin, 339 So.2d 474, 476* (La.App. 2 Cir.), *writ denied*, 341 So.2d 1126 (La.1977), stating "There must be actual, physical use or occupation of quarters for living purposes before residence is established"].

Essentially, he argues that even if his act of voting in Calcasieu Parish in November 2022, maintaining homestead exemption in Calcasieu Parish until April 2023, and running his business and receiving mail at his home in Calcasieu Parish evidence an "intent to remain" in Calcasieu Parish, there is no evidence of him using the Calcasieu Parish home as a "place of abode." [mjc: I will note that his wife testified that they did sleep in the house one night, though it is unclear if that was before or after they were married.] Even if we discount the testimony of the contractor Mr. Sarver, who said Mr. McKellar told him he did not intend to remain in the home in Calcasieu Parish, he argues that intent to remain alone is insufficient to establish domicile.

We reject Mr. McKellar's argument and find that the proper standard of review is manifest error. Domicile and residency are questions of fact, which a court of appeal reviews pursuant to the manifest error/clearly wrong standard. *Thomas v. Lartigue*, 22-517 (La.App. 3 Cir. 8/11/22), 348 So.3d 123, *writ denied*, 22-1234 (La. 8/17/22), 344 So.3d 65. Thus, after reviewing the record in its entirety, we will not reverse the trial court's reasonable factual findings that are supported by the record. *Stobart v. State*, 617 So.2d 880 (La. 1993).

After reviewing the record in its entirety, we find that Mr. McKellar did not indicate an intent to change his domicile until after August 10, 2022. The trial court found that Mr. McKellar evinced an intent to maintain his domicile in Calcasieu

Parish by voting in Calcasieu Parish in November 2022, failing to change his address on his driver's license until February 2023, failing to change his voter registration to Rapides Parish until February 2023, and maintaining his homestead exemption in Calcasieu Parish until April 2023. We find no manifest error in that factual finding. The judgment of the trial court is affirmed.

## CONCLUSION

The judgment of the trial court disqualifying Mr. McKellar as a candidate for State Representative for District 38 in the October 14, 2023 primary election is affirmed. Costs of this appeal are assessed to Mr. McKellar.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

23-531

GWEN FONTENOT, ET AL.

V.

TODD P. MCKELLAR

**Stiles, J., dissents and assigns reasons.**

I respectfully dissent.

In *Becker v. Dean*, 03-2493, pp. 6-7 (La. 9/18/03), 854 So. 2d 864, 869, the

supreme court stated:

> There is nothing more fundamental to our society than the ability of our electorate to choose its leaders. The purpose of the election process is to provide the electorate with a wide choice of candidates. *Williams v. Ragland*, 567 So.2d 63 (La.1990). *See also Roe v. Picou*, 361 So.2d 874 (La.1978); *Jumonville v. Jewell*, 317 So.2d 616 (La.1975); *Langridge v. Dauenhauer*, 120 La. 450, 45 So. 387 (1908). Because encouraging qualification is an integral component of the process, laws regulating the process must be interpreted with this purpose in mind. *Williams*, 567 So.2d at 66. Thus, the interests of the state and its citizens are best served when election laws are interpreted so as to give the electorate the widest possible choice of candidates. See Rich v. Martin, 259 So.2d 113 (La.App. 1 Cir.1971).

In this case, the evidence shows that (1) the defendant lived continuously in

Rapides Parish from October 31, 2021 to the present; (2) the defendant's residence

in Lake Charles was uninhabitable from August 2020, when Hurricane Laura made

landfall, until approximately April 2023; and (3) the defendant lived with his wife

continuously in the boundaries of House District 38 from the March 25, 2022, until

the present. The evidence was undisputed that the defendant resided in Rapides

Parish without interruption from October 31, 2021, until the date of his qualification.

In order to establish a domicile, there must first be a habitable residence. The only habitable residence the defendant could have made his domicile for the year preceding his qualification was in Rapides Parish. Considering the legal requirement that we view the evidence in the light most favorable to candidacy, I find the trial court was manifestly erroneous in its judgment. I find the defendant has met the qualifications to be a candidate for House District 38 at the October 14, 2023 primary election.