Dear Representatives LaFleur and Daniel:
You have requested an opinion from this office on whether John Breaux, a former member of the U.S. Senate from Louisiana, may legally enter the 2007 governor's race. Your request lists a number of facts pertaining to Mr. Breaux's connection to Louisiana, Maryland and the District of Columbia. Under these facts, you ask whether Mr. Breaux "would be considered to satisfy the [. . . ] requirement that he have been a citizen of Louisiana for the five years preceding the dates for qualification."[1] Stated differently, the question we are to answer is whether Mr. Breaux meets the qualifications to run in the October 2007 election for governor.
For reasons explained below, the issue of whether Mr. Breaux has remained a Louisiana citizen for the preceding five years[2] is an issue of fact, and one that appears certain to be litigated. Due to the restrictions imposed by law as well as this office's policies and historical practice, I must refrain from rendering an opinion on the ultimate issue of whether Mr. Breaux meets the qualifications to become a candidate in the governor's race. However, consistent with the law and our policies and past practice, I have addressed some issues of law that underlie the question you pose. *Page 2 I. THE PURPOSE AND SCOPE OF A LEGAL OPINION BY THE ATTORNEY GENERAL
La.R.S. 49:251 (A) states that "the attorney general shall give his opinion in writing upon all questions of law" to elected and appointed state officers as required by statute. The Attorney General's written policy manual, which has historically guided the process by which this office renders legal opinions, provides that written opinions will be rendered to "the members of the Legislature on matters relating to state law." The manual requires that the request contain "a complete statement of the facts describing the situation out of which the legal issue arises. [. . . ] The Attorney General will not seek out the facts or infer the questions" from the opinion request. The manual categorically states that "the Attorney General will not furnish opinions [. . . ] on questions of fact;" nor will the Attorney General issue an opinion "on questions scheduled for determination by the courts, or where the prospect of litigation appears imminent." "For a particularly difficult or important problem of law," the policy suggests that "officials should resort to a declaratory judgment wherever indicated, and the Attorney General may recommend this or other courses of action that may be more appropriate than the issuance of an official opinion."
As early as 1918, this office stated that "it is impossible for this office to give an opinion on [an issue] when [. . . ] residence is questioned. There are so many facts surrounding the matter of residence that will bear upon the question that we cannot determine such cases."[3]
We have similarly stated that "opinions will not be rendered in cases where [. . . ] the issue will be settled only by court action."[4]
 II. ELIGIBILITY TO SEEK A STATEWIDE ELECTIVE OFFICE
To seek any statewide elective office, including the office of the governor, at the time of qualification for election, a person must be at least twenty-five (25) years of age, be an elector, and have been a citizen of the United States and of Louisiana for at least the preceding five (5) years.[5]
La.R.S. 18:451, concerning the qualification of candidates, states in pertinent part:
 A person who meets the qualifications for the office he seeks may become a candidate and be voted on in a primary or general election if he qualifies as a candidate in the election. Except as otherwise provided by law, a candidate shall possess the *Page 3 
qualifications for the office he seeks at the time he qualifies for that office. In the event that the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying, notwithstanding any other provision of law to the contrary. [Emphasis added.]
In view of use of the word "shall" in La.R.S. 18:451, any requirement of domicile or residency, as the case may be, is mandatory.
The Election Code provides for the time at which a candidate must meet the qualification requirements for the office he seeks. La.R.S. 18:451
states in pertinent part, "[e]xcept as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office." Thus, the candidate's qualification to offer himself for election is determined when he files with the Clerk of Court and the Secretary of State as a candidate for public office. SeeButler v. Cantrell[6] and Foley v. Dowling.[7]
 III. THE PROCESS OF QUALIFICATION UNDER LOUISIANA LAW
The Louisiana Constitution of 1974 and the Election Code, contained in Title 18 of the Louisiana Revised Statutes, establish qualifications for each elective office in the State. Under La.R.S. 18:461, which governs the manner in which a potential candidate in a primary election qualifies, "a person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy, which shall be accompanied either by a nominating petition or by the qualifying fee and any additional fee imposed." La.R.S. 18:462
provides that state candidates shall qualify for a primary election with the secretary of state or a person in his office designated to receive qualifying papers. La.R.S. 18:463 (2)(a) requires, inter alia, that "the notice of candidacy shall include a certificate, signed by the candidate, certifying that he has read the notice of his candidacy, that he meets the qualifications of the office for which he is qualifying."
La.R.S. 18:491, et seq., and La.R.S. 18:1401, et seq., establish the procedure by which a challenge is made to a candidacy. Under La.R.S. 18:491, a registered voter may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote; the statute also allows challenges by the Supervisory Committee on Campaign Finance Disclosure. La.R.S. 18:492 allows an action *Page 4 
objecting to the candidacy of a person who qualified as a candidate in a primary election to be brought on the grounds that the candidate "does not meet the qualifications for the office he seeks in the primary election." Under La.R.S. 18:493, the suit must be filed within seven days after the close of qualifications for candidates in the primary election.
As can be seen from the statutory framework described above, neither the Louisiana Constitution nor the Election Code provides for a mechanism of "pre-qualification" by which a potential candidate could ascertain that he/she meets all the qualifications to become a candidate prior to filing a notice of candidacy. Rather, a binding and definitive determination of whether a candidate meets all the qualifications is only made where the qualifications of a candidate are called into question or challenged.
Prior opinions of this office also reflect the view that a potential candidate has a right to declare his/her candidacy in that the filing a notice of candidacy must be accepted by the official in charge of receiving such notices; the decision to accept a timely filed notice is not a discretionary function of the official. In Atty. Gen. Op. No. 87-531, this office addressed whether a qualifying official (Clerk of Court or Secretary of State) may refuse to qualify an individual who offers himself as a candidate for judge if the candidate is known to be past the mandatory retirement age of seventy years. The opinion states:
 La.R.S. 18:470 provides in pertinent part as follows:
 Notices of candidacy. Upon receipt of a notice of candidacy, the secretary of state, the president or secretary of the parish board of elections supervisors, or the clerk of court, as the case may be, shall endorse upon it the date and time of filing and either the amount of the qualifying fee paid by the candidate or a statement that a nominating petition was filed by the candidate.
 This provision is mandatory. The qualifying official is not required and indeed has no discretion to judge the qualifications of a potential candidate. The procedure for objections to candidacy is provided at La.R.S. 18:491 et seq. [Emphasis added.]
Case law supports this view that the proper time and procedure for challenging a candidate's qualification is not until the close of qualifications as provided in La.R.S. 18:491 et seq. In Cade v. Lombard,[8] several voters filed suit challenging the candidacy of Herbert Cade for the senate, on the grounds that Cade was not a domiciliary of the district he sought to represent as required by law. Before the court rendered a decision in the voters' action to disqualify Cade, *Page 5 
Cade had sought and obtained a declaratory judgment declaring him a domiciliary and thus eligible to run. In the suit brought by the voters, Cade argued that the prior declaratory judgment in favor of his candidacy precluded the voters from contesting his domicile and qualification. The trial court rejected his argument and allowed the challenge to proceed. The Fourth Circuit upheld the trial court's determination, stating as follows: "The trial court correctly rejected that argument and gave no effect to the declaratory judgment. A candidate cannot deprive the electors of the right to challenge his qualification for the office he seeks by preemptively having himself declared qualified in an action to which the electors are not parties."[9]
Thus, the law requires no "pre-qualification," nor does it provide for a mechanism by which a potential candidate may obtain in advance a definitive determination that he/she is qualified to run for an elective office. Rather, the statutory scheme allows a potential candidate the right to declare his candidacy in good faith, without the need for any legal or judicial determination. This right of the candidate is counterbalanced by the right of a registered voter to challenge his candidacy in a contradictory proceeding brought after the close of the qualifications for candidates in the primary election. Stated differently, a potential candidate relying on a good faith belief that he/she qualifies may file a notice of candidacy and is presumed to be qualified unless proven otherwise.
Louisiana courts have consistently upheld this presumption in favor of qualification, and have stated that the laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy.[10] Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office.[11] The burden of proof is on the party contesting candidacy.[12] The public policy underlying this presumption is as follows: the spirit of the law providing for primary elections is to encourage the multiplication of worthy candidates for nomination to public office, in order that the body of voters constituting a political party, or constituting the electorate at large may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority, or thrust upon them in some other way.[13] A person claiming to be a citizen does not have the burden of proving his/her citizenship; rather, the burden to prove otherwise falls on a person challenging that citizenship.[14] *Page 6 
In sum, Mr. Breaux needs no legal pronouncement that he is a citizen or that he is qualified in order to run and may simply rely on his good faith evaluation of his qualifications. Mr. Breaux is presumed to be qualified if he chooses to file his candidacy for an elective office in accordance with the statutes discussed above, averring that he is qualified to run for office. This presumption can only be rebutted through a successful objection to his candidacy filed pursuant to La.R.S. 18:491, et seq., and La.R.S. 18:1401, et seq. If there is no judicial challenge by a registered voter, the presumption of qualification will remain undisturbed; should there be a challenge, the challenging party will bear the burden of proving disqualification. The court's determination will be based on an extensive factual inquiry into all relevant factors, findings of fact based on sworn testimony and other evidence presented at a contradictory hearing.
If Mr. Breaux does not wish to merely rely on this legal presumption or his own assessment, he may seek a declaratory judgment determining his Louisiana citizenship and qualification, as was done in Cade,supra. Obtaining such a declaratory judgment by a court could serve as an indication of due diligence. Furthermore, rendering a declaratory judgment on a factual issue would be consistent with the role and authority of a court, whereas rendering an opinion on an issue of fact would not comport with the role of the Attorney General. However, it should be noted that even a favorable declaratory judgment by a court would not preclude a challenge by a registered voter to his candidacy, as stated in Cade, supra. *Page 7 
 IV. CONCLUSION
The questions posed in your request rest on issues of fact. Since 1918, it has been the policy of this office that no opinions will be rendered on issues of fact.[15] In addition, the law favors qualification and places the burden of proving otherwise on the party challenging a candidate's eligibility. The law does not provide for or require "pre-qualification." Under the existing statutory scheme which presumes qualification subject to legal challenges by a registered voter, the issue of Mr. Breaux's eligibility can be resolved definitively only by the courts, if challenged. It also has long been the policy of this office to decline to render an opinion on matters where litigation appears likely. Therefore, I must refrain from rendering an opinion on the ultimate factual issue of whether Mr. Breaux is qualified to run for the office of the governor.
I hope this sufficiently answers your inquiry; if I can be of any further assistance, please do not hesitate to contact me.
 With best regards,
 CHARLES C. FOTI, JR.
 LOUISIANA ATTORNEY GENERAL
[1] Your request is attached to this opinion as Attachment A, and related correspondence received from others is attached as Attachment B.
[2] For ease of reference, the term "the preceding five years" is used here to mean the five years preceding the date of qualification.
[3] 1918-19 La. Op. Atty. Gen. 445.
[4] 1944-46 La. Op. Atty. Gen. 56.
[5] La.Const. art. IV, § 2.
[6] 630 So.2d 852, 855 (La.App. 4 Cir. 1993), writ denied, 94-0003 (La. 1/5/94), 631 So.2d 431.
[7] 445 So.2d 785 (La.App. 2 Cir. 1984).
[8] Cade v. Lombard, 99-0184 (La.App. 4 Cir. 1/23/99), 727 So.2d 1221.
[9] Id. at 1222.
[10] See Landiak v. Richmond, 05-0758 (La. 03/24/05), 899 So.2d 535;Becker v. Dean, 03-2493 (La. 09/18/03), 854 So.2d 864, 869; Russell v.Goldsby, 00-2595 (La. 09/22/00), 780 So.2d 1048, 1051; Dixon v. Hughes,587 So.2d 679, 680 (La. 1991); Knott v. Angelle, 03-230 (La.App. 3 Cir. 2/27/03), 846 So.2d 825; Cavignac v. Bayham, 04-0260 (La.App. 4 Cir. 2/17/04), 869 So.2d 159.
[11] Id.
[12] Id.
[13] Langridge v. Dauenhauer, 120 La. 450, 45 So. 387 (La. 1908).
[14] Sturm v. Hutchinson, 37 So.2d 45, 48 (La.App. 1 Cir. 1948).
[15] 1918-19 La. Op. Atty. Gen. 445.